IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGEL LUIS THOMAS, Sr., | : | |
| | : | |
| Plaintiff, | : | No. _____ |
| | : | |
| v. | : | |
| | : | |
| COL. TYREE C. BLOCKER, Jr., | : | |
| SGT. O.E. ROWLES, | : | |
| CAPT. MAURICE A. TOMLINSON, | : | |
| TPR. DAVID HOWANITZ, | : | JURY TRIAL DEMANDED |
| KEVIN KAUFFMAN, | : | |
| CO HARRIS, | : | |
| MS. HAWN, and | : | |
| NICOLE PITTMAN, | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Angel Luis Thomas, Sr. brings this action under the federal Civil Rights Act, 42 U.S.C. §§ 1983 & 1988, for violations of rights guaranteed by the Petition Clause of the First Amendment, the Due Process Clause of the Fourteenth Amendment, and the Ex Post Facto Clause of Article I of the United States Constitution.  Plaintiff also seeks relief available under Pennsylvania tort law for defamation, invasion of privacy, and intentional infliction of emotional distress.

### JURISDICTION AND VENUE

1.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4) and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

2.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this action occurred at the State Correctional Institution at Huntingdon in Huntingdon County, Pennsylvania, and at offices of the Pennsylvania State Police in Dauphin and Lancaster Counties, Pennsylvania.

## PARTIES

3.    The plaintiff, Angel Luis Thomas, Sr., is an adult male citizen who resides in Lancaster County, PA.  He was in prison continuously from 1991 until his release from the State Correctional Institution at Huntingdon on January 11, 2018.  Mr. Thomas is of African American and Hispanic heritage.

4.    Defendant Col. Tyree C. Blocker, Jr. is Commissioner of the Pennsylvania State Police (PSP).  He is sued in his official capacity and as an individual.

5.    Sergeant O.E. Rowles is Commander of the Megan's Law Section of the PSP Division of Operational Records.  He is sued in his official capacity and as an individual.

6.    Captain Maurice A. Tomlinson is Commander of the Lancaster Station of PSP Troop J.  He is sued in his official capacity and as an individual.

7.    Trooper Davis Howanitz is a Trooper First Class at Lancaster Station of PSP Troop J.  He is sued in his official capacity and as an individual.

8.  Kevin Kauffman is Superintendent of SCI Huntingdon.  He is sued in his official capacity and as an individual.

9.  CO Harris is a Corrections Officer who works in the Security Office at SCI Huntingdon.  He is one of several officers with the surname "Harris" or "House," and his nickname is "No Neck."  He is sued as an individual.

10.  Ms. Hawn is a Corrections Counselor at SCI Huntingdon.  She is sued as an individual.

11.  Nicole Pittman is a Records Specialist II at Huntingdon.  She is sued as an individual.

12.  All defendants are employees of the Commonwealth of Pennsylvania.

13.  In the actions and omissions alleged herein, each defendant was acting under color of state law, although not always within the proper scope of his or her official duties.

<u>FACTS</u>

**Wrongful Inclusion In Registry Of Sex Offenders**

14.  Plaintiff Thomas was convicted in July 1991 of having violated the Pennsylvania rape statute, 18 Pa.C.S § 3121.  The date of the offense was January 4, 1991.  The trial was held in York County, case no. CP-67-CR-0000447-1991.

15.     A lengthy sentence was imposed, which Thomas served in the custody of the Pennsylvania Department of Corrections (DOC).

16.     At the time when Thomas was charged, tried, and sentenced, there was no provision for registration of sex offenders in Pennsylvania.

17.     About six years later, the Pennsylvania legislature enacted the first in a series of "Megan's Laws" to compel persons to register their names, addresses, and photographs on a published list if they were convicted of certain sex crimes.

18.     During the ensuing decades, Pennsylvania's sex-offender registration statutes were struck down by various judicial decisions, and revised statutes were enacted by the legislature in response.

19.     Registration is designed to warn citizens that an offender is dangerous because his crime was classified as one of the gravest sexual offenses and because it was relatively recent, that is, committed in 1996 or later.

20.     None of the registration statutes applied to Thomas, who remained incarcerated for the 1991 conviction.  The statutes did not require registration during incarceration.

21.     Thomas was scheduled to be released from prison in January 2018.

22.     In December 2017, Thomas was informed by his prison counsellor, Ms. Hawn, and by Superintendent Kauffman through CO Harris and other staff,

that Thomas had to submit to sex-offender registration or else he would not be released from prison.

23.     On or about December 27, 2017, CO Harris escorted Thomas to the prison records office and compelled him to undergo registration procedures there.

24.     CO Harris and Nicole Pittman caused Thomas to be photographed in his prison uniform and fingerprinted.  They immediately entered his name, home address, photograph, and criminal record into the online sex-offender registry.

25.     Thomas's name and face immediately became visible to anyone who consulted the public sex registry site maintained by the PSP.

26.     Defendant Pittman knew that Thomas was not required to register.  In her position as a Records Specialist, she had access to the records of his conviction and sentencing and his subsequent continuous imprisonment.  Pittman knew that Thomas had been incarcerated since 1991.

27.     Defendants Hawn, Harris, and Kauffman also knew that Thomas was not required to register.  They all had routine access to online databases maintained by DOC.  Hence, they knew that Thomas was convicted in 1991 and had been incarcerated ever since.

## Wrongful Re-Registration After Release

28.     Pittman, Hawn, Harris, and Kauffman told Thomas that, upon his release, he had to report to the State Police to register again.

29.     Thomas was released from SCI Huntingdon on January 11, 2018. Two days later, he presented himself at the State Police station in Lancaster, PA.

30.     On January 13, 2018, Thomas was photographed again, and his new photo and home address were entered into the public registry by Trooper David Howanitz and Captain Maurice A. Tomlinson of the Pennsylvania State Police.

31.     Defendants Tomlinson and Howanitz registered Thomas even though they knew that they should not continue his registration.  They knew that Thomas was not required to register, because they examined his records and saw that his conviction was from 1991.

32.     Thomas attempted to find employment, while his name and picture remained publicly displayed in the registry of sex offenders.

## Invidious Motivation Of Huntingdon Defendants

33.     During his final years in prison, Thomas was litigating several actions against DOC staff.  In one of those actions, he had sued a number persons who worked at SCI Huntingdon, including the former Superintendent.  That action is Thomas v. Duvall, No. 3:16-cv-00451-MWB-SES.

34.     Defendants Pittman, Hawn, Harris, and Kauffman knew that Thomas was conducting civil litigation against their co-workers.  They resented him because of the litigation, and they sought the means to retaliate against him for it.

35.     In late 2017, in the context of Thomas's impending release, Defendants Pittman, Hawn, Harris, and Kauffman each consulted the prison records and obtained information about the relevant dates and circumstances. They formulated a plan to punish Thomas for his litigation by unjustly subjecting him to the shame and other injuries attending registration as a sex offender.

36.     Thomas is of mixed racial heritage.  During his long incarceration, DOC initially classified him as "black" in its official records.  At some point, the classification was changed to "hispanic" for no known reason.  Thomas embraces both identities.  His minority status was visible to staff at the prison.

37.     Defendants Pittman, Hawn, Harris, and Kauffman recognized that Thomas was a member of a racial minority.

38.     Pittman, Hawn, Harris, and Kauffman shared a dislike for prisoners who were African Americans and Latinos.  They reasoned that they could harm Thomas with impunity because of his minority status.  They assured one another that black men and Latinos are prone to be rapists and are more likely to re-offend through sex crimes than whites.  They believed that they should not be held to

7

account for their wrongful registration of Thomas, because he was black and
Hispanic, hence less credible than a white man would be.

### Short-Lived Removal From Registry

39.    At the time when Thomas was compelled to register, Pennsylvania's
sex-registration statute had been struck down by the state supreme court in
Commonwealth v. Muniz, 164 A.3d 1189 (Pa 2017), but a petition for certiorari of
Muniz was pending at the United States Supreme Court.

40.    Thomas's counsel, the undersigned, was in constant communication
with the attorney from Pennsylvania's Office of Attorney General who represented
defendants in the ongoing litigation, Thomas v. Duvall.  Through counsel, Thomas
repeatedly protested the wrongful registration.

41.    Thomas again demanded that his name be removed from the sex-
offender registry after the U.S. Supreme Court denied certiorari in Muniz on
January 19, 2018.

42.    Thomas was removed from the registry at some point during the next
few days,  Counsel confirmed that the listing had been removed as of January 29,
2018.

43.     On February 21, 2018, the Pennsylvania legislature enacted another sex-offender registration statute, which became effective immediately.  It is codified at 42 Pa.C.S. §§ 9799.51 - 9799.75.

44.     The new statute, known as Act 10, does not apply to Mr. Thomas.  It applies only to those whose offenses were committed recently, that is, on or after April 22, 1996.

45.     Defendants Blocker and Rowles knew that the 2018 statute does not apply to men, like Thomas, whose convictions occurred prior to 1996.

46.     Nevertheless, while knowing that the new statute did not apply to Thomas, Defendants Blocker and Rowles took action to restore the electronic information about Thomas to the online sex-offender website.

47.     Thomas's name, home address, and photograph were again displayed on the sex-offender website at some point after February 21, 2018.  Mr. Thomas had no notice of that action, but his counsel confirmed on April 4, 2018 that the identification of Thomas as a sex offender was once more on display.

48.     Thomas's counsel immediately contacted the State Police to inform them of the error.

49.     On April 4, 2018, PSP representative Natalie McDonald advised counsel that Defendant Rowles refused to remove Thomas's name.  Rowles said

that Thomas's name and information would remain in the sex-offender registry unless a court ordered PSP to remove them again.

50.     McDonald also advised counsel that Thomas would be arrested, detained, and criminally charged if he did not present himself at an office the State Police by May 22, 2018 for yet another round of registration .

51.     Thomas has no choice but to continue to cooperate with the improper registration regime, because the threats of the PSP are credible.

**Invidious Motivation Of PSP Defendants**

52.     Defendants Blocker, Rowles, Tomlinson, and Howanitz, in the normal course of their duties, communicated with one another about the invalidation of the registration statute in July 2017 by the state supreme court in <u>Muniz</u>, which they disliked, and about the subsequent efforts to overturn <u>Muniz</u> through cert by the U.S. Supreme Court, which failed.

53.     Two of the PSP Defendants, that is, Commissioner Blocker and Sergeant Rowles, had the power to prevent local prison staff like Pittman, Hawn, Harris, and Kauffman from formulating and carrying out any plan to harm a prisoner like Thomas by disregarding the dates of his offense and conviction when compelling him to wrongfully register.

54.     Neither Blocker nor Rowles communicated the limitations of the registration statutes to DOC staff who routinely conducted the registrations, like Pittman, Hawn, Harris, and Kauffman.

55.     Neither Blocker nor Rowles effectively communicated the import of Muniz, which invalidated an earlier sex-offender registration statute in July 2017.

56.     Neither Blocker nor Rowles effectively communicated the limited scope of the new registration statute enacted in February 2018.

57.      Instead of requiring compliance with the explicit limitations imposed on or by the statutes, Blocker and Rowles sought to covertly defeat those limits for the purpose of imposing more onerous punishment on sex offenders than that contemplated by the state legislature and countenanced by the courts.

58.     Blocker and Rowles shared in the PSP's "fearmongering or hyperbole" asserting that any judicial limit on registration "puts the public, particularly children, at risk," in the words of an amicus brief filed by PSP in support of the unsuccessful petition for certiorari of Muniz.

59.     Blocker and Rowles, as senior staff of PSP, set the tone and the agenda that was followed at the local level by Defendants Tomlinson and Howanitz.

60.     Nevertheless, Tomlinson and Howanitz themselves knew that PSP, under the leadership of Blocker and Rowles, exceeded the limits set by the legislature and by Pennsylvania's highest court.  Hence, Tomlinson and Howanitz would have been able to resist and call into question the excesses of their superiors, but they chose not to do so.

61.     Tomlinson and Howanitz shared their superiors' racial bias against blacks and Latinos like Thomas and their discomfort with lawful limits on PSP's power.  Therefore, Tomlinson and Howanitz wrongfully caused Thomas to undergo re-registration on January 13, 2018 when they knew that the statutes did not apply to him.

62.     Blocker, Rowles, Tomlinson, and Howanitz determined that they would act in concert, in their respective roles, to take matters into their own  hands and defeat the judicial decisions and legislative enactments by covertly continuing improper registration of minority men, like Thomas, whom they deemed to be dangerous sexual predators and racially predestined to re-offend.

### Injuries To The Plaintiff

63.     Thomas has been wrongfully listed on the Pennsylvania sex-offenders registry since December 27, 2017, except for a few days in late January and early February 2018, and the wrongful listing continues to this day.

64.    The registry exposes Thomas's name, photograph, home address, conviction, and other sensitive information to anyone with Internet access, including but not limited to potential employers, landlords, and friends.

65.    Registration as a recent sex offender burdens Thomas with major, direct disabilities and restraints such as in-person reporting and updating requirements.

66.    Registration as a recent sex offender imposes on Thomas major secondary disabilities in finding and keeping housing, employment, and schooling, traveling out of state, and increases the likelihood that Thomas may be subject to violence and adverse social and psychological impacts.

67.    These disabilities cause ongoing economic, social, and even physical harm.  For example, Thomas must rely on a bicycle for transportation to his present job because it does not pay enough for him to afford an automobile.  He pedals one-and-one-half hours each night to arrive in time for the third shift.

68.    Thomas has been placed at risk of incarceration for any future noncompliance with the registration requirements, no matter how inadvertent.

69.    Information about Thomas that is publicly disseminated through the sex-offender registry goes beyond conviction data and includes sufficient information to allow members of the public to harass him and threaten his safety.

70.     Thomas experiences anxiety over those risks and disabilities, fear of potential violence and ridicule, social isolation, as well as humiliation and shame because the Internet quickly links his name to the sex-offender registry.

71.     The registry listing implies that Thomas's conviction was more recent than it actually was, and in that way, the registry attributes disproportionate danger to Thomas and subjects him to undue fear, loathing, and social isolation,

72.     Thomas is burdened with a requirement to report to the State Police numerous times each year, or else risk arrest and prosecution.

73.     Thomas fears incarceration and other reprisals by PSP, if he fails to complete every detail of registration throughout decades ahead.

74.     Thomas has lost opportunities to be hired at jobs with salaries better than minimum wage and nearer to his home because of the registry.

75.     Thomas experiences unfair loss of reputation, in violation of rights protected by Article 1 section 1 of the Pennsylvania state constitution.

76.     The unfair listing in the sex-offender registry has caused Thomas severe emotional distress and psychological disorientation.

77.     Thomas will continue to suffer from the wrongful actions of the defendants for the rest of his life, both in the manners already experienced and in ways yet to be determined.

### CAUSES OF ACTION

### Count I
### Deprivation Of Liberty Interests Without Due Process

78.    Paragraphs 1 through 77 are included here by reference.

79.    Defendants Kauffman, Harris, Hawn, and Pittman wrongfully compelled Plaintiff to register on the Pennsylvania sex-offenders registry on or about December 27, 2017, without any need or process, and thereby required him to continue to report to the Pennsylvania State Police at frequent intervals for the rest of his life, in violation of his liberty interests, while depriving him of additional liberty interests including but not limited to the chance for employment commensurate with his abilities and convenient to his home.

80.    Defendants Blocker, Rowles, Tomlinson, and Fisher compelled Plaintiff to re-register on the Pennsylvania sex-offenders registry on or about January 13, 2018, without cause or due process, thereby depriving him of liberty interests, including but not limited to potential employment opportunities and social contacts.

81.    Defendants Blocker and Rowles caused Plaintiff's name, photograph, and other personal information to be restored to the Pennsylvania sex-offenders registry at some time between February 21, 2018 and April 4, 2018, without notice and without cause or due process, and thereby required him to continue to report to

15

the Pennsylvania State Police at frequent intervals for the rest of his life, in violation of his liberty interests, while depriving him of additional liberty interests including but not limited to the chance for employment commensurate with his abilities and convenient to his home.

82.     As a result of these infringements of rights protected by the Due Process Clause of the Fourteenth Amendment, Plaintiff sustained injuries described herein.

## Count II
## Retaliation For Protected Activity

83.     Paragraphs 1 through 77 are included here by reference.

84.     Defendants Kauffman, Harris, Hawn, and Pittman wrongfully compelled Plaintiff to undergo registration as a sex offender in order to punish Plaintiff for litigation against their co-workers – a protected activity – and thereby sought to discourage him from continuing that litigation while making him an example to dissuade others from filing federal sits to vindicate their rights.

85.     As a result of the retaliation inflicted by Kauffman, Harris, Hawn, and Pittman in violation of rights protected by the Petition Clause of the First Amendment, Plaintiff sustained injuries described herein.

16

## Count III
## Violations Of Ex Post Facto Clause

86.     Paragraphs 1 through 77 are incorporated here by reference.

87.     Defendants Kauffman, Harris, Hawn, and Pittman imposed an unlawful punishment on Plaintiff by compelling him to register as a sex offender on or about December 27, 2017 although his sentence included no such requirement, in violation of rights protected by Article I of the United States Constitution.

88.     Defendants Blocker, Rowles, Tomlinson, and Fisher imposed an unlawful punishment on Plaintiff by compelling him to re-register as a sex offender on or about January 13, 2018, although his sentence included no such requirement, in violation of rights protected by Article I of the United States Constitution.

89.     Defendants Blocker and Rowles caused Plaintiff's name, photograph, and other personal information to be restored to the Pennsylvania sex-offender registry at some time between February 21, 2018 and April 4, 2018, and maintained the listing thereafter, although his sentence included no such requirement, in violation of rights protected by Article I of the United States Constitution.

90.    As a result of these violations of the Ex Post Facto Clause,  Plaintiff sustained injuries described herein.

## Count IV
## Defamation

91.    Paragraphs 1 through 77 are incorporated here by reference.

92.    Defendants Kauffman, Harris, Hawn, Pittman, Blocker, Rowles, Tomlinson, and Fisher each intentionally or recklessly caused Plaintiff to be publicly and falsely listed as the dangerous perpetrator of a recent sex crime, thereby harming his reputation, lowering him in the estimation of the community, and deterring other persons from associating with him, hiring him, or having other dealings with him.

93.    As a result of defamation by the Defendants, Plaintiff sustained injuries described herein.

## Count V
## Invasion Of Privacy

94.    Paragraphs 1 through 77 are incorporated here by reference.

95.    Defendants Kauffman, Harris, Hawn, Pittman, Blocker, Rowles, Tomlinson, and Fisher each intentionally or recklessly caused Plaintiff to be publicly and falsely listed as the dangerous perpetrator of a recent sex crime, thereby exposing aspects of his private life that had ceased to be matters of public concern long ago.

18

96.     As a result of this invasion of privacy by the Defendants, Plaintiff sustained injuries described herein.

## Count VI
## Intentional Infliction Of Emotional Distress

97.     Paragraphs 1 through 77 are incorporated here by reference.

98.     Defendants Kauffman, Harris, Hawn, Pittman, Blocker, Rowles, Tomlinson, and Fisher each intentionally, wantonly, or recklessly caused severe emotional distress to the Plaintiff when they wrongfully published his name and identifying information on the Pennsylvania registry of dangerous recent sex offenders and thereby exposed him to ridicule, physical attack, social isolation, and humiliation, and when they refused to correct the wrongful listing after it was brought to their attention.

99.     Defendants' wrongful listing of Plaintiff as a dangerous recent sex offender, when he had paid his debt to society for twenty-seven years and was attempting to make a new start upon release from prison, compounded by their refusal to expunge the listing upon notification that it was wrong, constitutes conduct that should be deemed atrocious, beyond the bounds of human decency, and utterly intolerable in civilized society.

100.    As a result of Defendants' vengeful and atrocious infliction of emotional distress, Plaintiff sustained injuries described herein.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff requests that this Honorable Court:

A.   Award injunctive relief to Plaintiff by enjoining the Pennsylvania State Police from listing him in the registry of sex offenders;

B.   Award compensatory damages to Plaintiff against the Defendants;

C.   Award punitive damages to Plaintiff against the Defendants;

D.   Award the costs of this action to Plaintiff including but not limited to those available under 42 U.S.C. § 1988;

E.   Award reasonable attorney's fees to Plaintiff, including but not limited to those available under 42 U.S.C. § 1988; and

F.   Award such other and further relief as this Court may deem appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff respectfully demands that this matter be tried to a jury.

Respectfully submitted,

**/s/ Marianne Sawicki**
MARIANNE SAWICKI
PA  313471
2530 South Blair Avenue
Huntingdon, PA 16652
Phone:        (814) 506-2636
FAX:          (814) 644-6884
MarianneSawicki@verizon.net
Attorney for Angel Luis Thomas, Sr.

Date:  April 15, 2018