# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANGEL LUIS THOMAS, SR.,

       Plaintiff,

    v.

COL. TYREE C. BLOCKER, *et al.*,

       Defendants.

No. 4:18-CV-00812

(Judge Brann)

## MEMORANDUM OPINION

### APRIL 13, 2021

## I.  BACKGROUND

Angel Luis Thomas, Sr., Norman E. Gregory, and Glenn Morris (collectively "Plaintiffs") filed this second amended 42 U.S.C. § 1983 civil rights complaint alleging that numerous individuals violated Plaintiffs' rights by forcing them to register as sex offenders.[1] Plaintiffs raise claims for: (1) violations of their due process rights by requiring them to register as sex offenders without first providing a hearing; (2) unconstitutional retaliation against Plaintiffs for exercising their First and Fifth Amendment rights; (3) violations of the *Ex Post Facto* Clause of the United States Constitution; (4) defamation under state law; and (5) invasion of privacy under state law.[2]

---

[1]  Doc. 59.

[2]  *Id.*

## A.     Plaintiffs' Criminal Convictions

Plaintiffs' involuntary registration as sex offenders occurred due to their prior criminal convictions. In 1991, Thomas was convicted in Pennsylvania state court of rape, involuntary deviate sexual intercourse, aggravated assault, reckless endangering, and unlawful restraint; he remained continuously incarcerated for those convictions until January 2018.[3] In 1994, Morris was convicted in Pennsylvania state court of rape and involuntary deviate sexual intercourse, and was continuously incarcerated for those convictions from 1993 until 2018.[4] Lastly, in 1983, Gregory was convicted in Pennsylvania state court of rape and indecent assault, and was continuously incarcerated for those convictions from 1982 until 2018.[5]

## B.     History of Sex Offender Registry Laws

The history of Pennsylvania's sex offender registry law was discussed in some detail in Magistrate Judge Susan E. Schwab's November 2018 Report and Recommendation. Magistrate Judge Schwab recounted that Pennsylvania enacted its first sex offender registration law—commonly known as Megan's Law—in 1995, although that law was later struck down by the Supreme Court of Pennsylvania.[6] After the law was struck down, Pennsylvania enacted a second registration law in 2000, and amended that law in 2004; the law was again struck down, and

---

[3]   Doc. 59 at 2, 4-5; Doc. 85 at 5-6.
[4]   Doc. 59 at 3, 5; Doc. 85 at 5-6.
[5]   Doc. 59 at 3, 5; Doc. 85 at 5-6.
[6]   Doc. 44 at 8.

Pennsylvania enacted yet another version of Megan's Law in 2012.[7] In 2017, the Supreme Court of Pennsylvania struck down the retroactive application of the 2012 version of Megan's Law.[8]

In response to that decision, Pennsylvania passed Act 10 of 2018 (H.B. 631) and Act 29 of 2018 (H.B. 1952) ("Act 29").[9] Act 29 made Megan's Law retroactively applicable by applying that law to any individuals who were (1) convicted of a sexually violent offense between April 22, 1996 and December 20, 2012, or (2) "required to register with the Pennsylvania State Police under a former sexual offender registration law of this Commonwealth on or after April 22, 1996 but before December 20, 2012, [and] whose period of registration has not expired."[10] The Pennsylvania General Assembly clarified that the sex offender registration provisions were non-punitive collateral consequences of an original conviction.[11] The Supreme Court of Pennsylvania thereafter concluded that Act 29 does not violate the prohibition against *ex post facto* laws.[12]

As to the relevant federal law, the Adam Walsh Child Protection and Safety Act of 2006, which in part contained the Sex Offender Registration and Notification Act ("SORNA"), "was enacted to close the loopholes in previous sex offender

---

[7]   *Id.* at 8-9.
[8]   *Id.* at 9.
[9]   For the sake of simplicity, these acts are referred to collectively as Act 29.
[10]  42 Pa.C.S. § 9799.52.
[11]  42 Pa.C.S. §§ 9799.11(B)(4), 9799.51(B)(4).
[12]  *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020).

registration legislation and to standardize registration across the states."[13] "In response to previous legislation, by 1996 every state and the District of Columbia had mandatory sex offender registration laws, but SORNA creates a national sex offender registry with the goal of eliminating inconsistencies among state laws."[14] "When Congress enacted SORNA, it was particularly concerned about the transient nature of many sex offenders and did not want to lose track of sex offenders when they moved from state to state."[15] SORNA sought to ensure consistency among the states in their sex offender registry laws:

> by repealing several earlier federal laws that also (but less effectively) sought uniformity; by setting forth comprehensive registration-system standards; by making federal funding contingent on States' bringing their systems into compliance with those standards; by requiring both state and federal sex offenders to register with relevant jurisdictions (and to keep registration information current); and by creating federal criminal sanctions applicable to those who violate the Act's registration requirements.[16]

To achieves those goals, SORNA provides that "a sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."[17] "A sex offender must appear in person in at least one of the applicable jurisdictions not later than 3 business days after each change of name, residence, employment, or student

---

[13] *United States v. Pendleton*, 636 F.3d 78, 82 (3d Cir. 2011) (internal quotation marks omitted).
[14] *Id.* (internal quotation marks omitted).
[15] *Id.*
[16] *Reynolds v. United States*, 565 U.S. 432, 435 (2012).
[17] *Pendleton*, 636 F.3d at 82-83 (brackets and internal quotation marks omitted).

status and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry."[18] SORNA also

> instructs States to maintain sex-offender registries that compile an array of information about sex offenders; to make this information publicly available online; to share the information with other jurisdictions and with the Attorney General for inclusion in a comprehensive national sex-offender registry; and to provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.[19]

In 2011, SORNA's registration requirements were applied retroactively to all pre-SORNA offenders.[20]

## C.    Procedural History

Prior to filing the second amended complaint, Thomas filed a motion for a preliminary injunction, seeking an order requiring that the Commonwealth of Pennsylvania remove his name from the sex offender registry.[21] In November 2018, Magistrate Judge Schwab issued a Report and Recommendation recommending that this Court deny Thomas' motion for a preliminary injunction because he failed to establish a likelihood of success on the merits of his claims.[22] Specifically, she recommended that, regardless of whether Thomas was required to register under Act

---

[18]   *Id.* at 83 (ellipsis and internal quotation marks omitted).
[19]   *Carr v. United States*, 560 U.S. 438, 455-56 (2010) (internal citations and quotation marks omitted).
[20]   *United States v. Cooper*, 750 F.3d 263, 266 (3d Cir. 2014); 28 C.F.R. § 72.3.
[21]   Doc. 14.
[22]   Doc. 44.

29, he was required to register under SORNA and, thus, his claims had little likelihood of success.[23]

Magistrate Judge Schwab noted that SORNA requires sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student,"[24] and that Thomas' crime of conviction undoubtedly qualifies as a sex offense under that statute.[25] Moreover, SORNA was made to retroactively apply to offenses committed prior to SORNA's enactment and, thus, Thomas qualifies as a sex offender who is required under SORNA to register as a sex offender.[26]

Magistrate Judge Schwab rejected Thomas' arguments to the contrary. First, she determined, based on binding precedent, that the retroactive application of SORNA did not violate the nondelegation clause.[27] Second, although Thomas argued that SORNA violates the Tenth Amendment's anticommandeering doctrine, the United States Court of Appeals for the Third Circuit has held that SORNA was enacted pursuant to the Commerce Clause and Congress' Spending Clause authority, meaning that it did not violate the anticommandeering doctrine.[28] This Court adopted

---

[23]  *Id.* at 11-22.

[24]  *Id.* at 15 (quoting 34 U.S.C. § 20913).

[25]  *Id.* at 16.

[26]  *Id.* at 16-17, 21-22.

[27]  *Id.* at 17-18. *See also Gundy v. United States*, 139 S. Ct. 2116, 2121 (holding that delegated authority under 34 U.S.C. § 20913(d) "easily passes constitutional muster").

[28]  Doc. 44 at 18-21.

the Report and Recommendation in its entirety, and denied Thomas' subsequent

motion for reconsideration.[29]

Thomas filed an interlocutory appeal of that decision;[30] on appeal, the Third

Circuit affirmed this Court's Order.[31] In affirming this Court's Order, the Third

Circuit likewise concluded that "[b]ecause Thomas was required by federal law to

register as a sex offender, he is unlikely to succeed on the merits of his claim."[32] In

so concluding, the Third Circuit rejected all four of Thomas' arguments.

First, the Third Circuit determined that SORNA applies to individuals, as

binding precedent has held that SORNA "imposes 'an independent and federally

enforceable duty . . . on sex offenders to register.'"[33] Second, the court noted that it

had previously determined, in a published opinion, that SORNA's registration

requirement is constitutional even though it applies to individuals who do not engage

in interstate travel, "'because it is necessary and proper for carrying into execution

Congress's power under the Commerce Clause.'"[34] Third, the court rejected

Thomas' assertion that, "because he claims to be exempted from registering as a sex

offender under Pennsylvania's registration regime, state officials may not compel

him to register under federal SORNA," since "a sex offender's 'federal duty to

---

[29] Docs. 64, 70.

[30] Doc. 72.

[31] Doc. 82.

[32] *Thomas v. Blocker*, 799 F. App'x 131, 132 (3d Cir.), *cert. denied*, 141 S. Ct. 164 (2020).

[33] *Id.* at 133-34 (quoting *United States v. Shenandoah*, 595 F.3d 151, 157 (3d Cir. 2010)).

[34] *Id.* at 134 (quoting *United States v. Pendleton*, 636 F.3d 78, 86 (3d Cir. 2011) (brackets omitted)).

register under [federal] SORNA was not dependent upon his duty to register under [state] law.'"[35] Finally, the Third Circuit held that Thomas' anticommandeering clause "argument rings hollow" because Congress enacted SORNA using its spending power.[36] Thomas petitioned the United States Supreme Court for a writ of certiorari, but the Supreme Court denied his petition.[37]

Defendants thereafter filed this motion for judgment on the pleadings.[38] Defendants contend that judgment on the pleadings is warranted because the uncontested facts establish that Plaintiffs were required to register as sex offenders under Megan's Law SORNA.[39] Defendants further argue that, because Plaintiffs were required to register as sex offenders, their claims fail as a matter of law.

Defendants argue that, first, Plaintiffs' due process claim fails because they received all the due process to which they were entitled when they were convicted of the underlying crimes.[40] Second, Defendants contend that the retaliation claim also fails because (1) there can be no adverse action if registration was required and (2) there is no causation since Defendants would have taken the same action regardless of what constitutionally-protected activity Plaintiffs undertook.[41] Third, Defendants assert that, based on binding precedent, there is no *ex post facto*

---

[35] *Id.* at 135 (quoting *Pendleton*, 636 F.3d at 86).
[36] *Id.* at 135 n.3.
[37] *Thomas v. Blocker*, 141 S. Ct. 164 (2020).
[38] Doc. 84.
[39] Doc. 85 at 8-12, 19-20.
[40] *Id.* at 13.
[41] *Id.* at 14-15.

violation.[42] Fourth, Defendants argue that Plaintiffs' defamation claim fails, as no untrue statements were offered by way of Plaintiffs' registration, and the invasion of privacy claim fails because registration was required.[43] Finally, Defendants assert that, at a minimum, they are entitled to qualified immunity.[44]

Plaintiffs respond that the motion should be denied because they are not required to register as sex offenders under either Megan's Law or SORNA.[45] Because Plaintiffs allege that they were not required to register as sex offenders, they assert that the remainder of their claims are valid, and judgment on the pleadings should be denied.[46] Moreover, Plaintiffs argue that Defendants are not entitled to qualified immunity because (1) certain Defendants waived that defense by failing to assert it as an affirmative defense in their answer and (2) it was clearly established at the time of Defendants' actions that Plaintiffs are not required to register as sex offenders.[47] Defendants have filed their reply brief,[48] and this matter is now ripe for disposition. For the following reasons, Defendants' motion will be granted.

---

[42] *Id.* at 15-16.

[43] *Id.* at 16-19.

[44] *Id.* at 20-21.

[45] Doc. 86 at 7-9, 13-15.

[46] *Id.* at 9-12.

[47] *Id.* at 5-7.

[48] Doc. 137.

## II.   DISCUSSION

"A motion for judgment on the pleadings under Rule 12(c) is analyzed under the same standards that apply to a Rule 12(b)(6) motion."[49] Accordingly,

> the court must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party, and may not grant the motion unless the movant clearly establishes that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law.[50]

"Thus, in deciding a motion for judgment on the pleadings, a court may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."[51]

### A.   Whether Plaintiffs Were Required to Register as Sex Offenders

The Court first considers whether, in light of their prior convictions, Plaintiffs were required to register as sex offenders. The Court again declines to address the pointed question of whether Plaintiffs are required to register as sex offenders under Megan's Law, because it is clear that Plaintiffs are required to register as sex offenders under SORNA.

First, it is beyond dispute that Plaintiffs are sex offenders as defined by SORNA. SORNA defines a sex offender as an "individual who was convicted of a

---

[49]   *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (internal quotation marks omitted).

[50]   *Id.* (internal quotation marks omitted).

[51]   *Id.* (internal quotation marks omitted).

sex offense"[52] and, in turn, defines a sex offense to include, *inter alia*, any "criminal offense that has an element involving a sexual act or sexual contact with another."[53] Under that definition, it is beyond question that Plaintiffs committed sex offenses, as the offense of rape in Pennsylvania requires that the defendant "engage[] in sexual intercourse with a complainant."[54] Thus, facially, Plaintiffs fall under the ambit of SORNA's registration requirement. Second, as both this Court and the Third Circuit has previously concluded, SORNA actually applies to Plaintiffs, and mandates their registration regardless of whether they engage in interstate travel.[55] Therefore, Plaintiffs are required to register as sex offenders under SORNA.

Plaintiffs nevertheless argue that they are not required to register as sex offenders under SORNA, and that the Third Circuit's ruling on appeal "misinterprets circuit precedent" and disregards Supreme Court precedent.[56] Specifically, Plaintiffs assert that SORNA cannot apply to individuals who refrain from interstate travel because, absent such travel, SORNA would violate the Tenth Amendment to the United States Constitution and usurp the police powers of the states.[57]

---

[52]  34 U.S.C. § 20911(1).
[53]  *Id.* § 20911(5)(A)(i).
[54]  18 Pa. Stat. and Cons. Stat. Ann. § 3121(a) (West 2020). Plaintiffs have conceded this issue. *See* Doc. 37 at 11 (stating "[t]here is no doubt here that Thomas was convicted of sexual offenses").
[55]  Doc. 44 at 17-22; *Thomas*, 799 F. App'x at 134.
[56]  Doc. 86 at 13.
[57]  *Id.* at 13-15.

11

As an initial matter, although Plaintiffs note that the Third Circuit's opinion on appeal is unpublished and therefore not precedential, and essentially urge this Court to disregard both its prior decision and that of the Third Circuit, they ignore that both prior decisions may not easily be discarded, as they are subject to the law of the case doctrine.

"The law of the case doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation"[58] and is applied to "foster[] the finality and efficiency of the judicial process by protecting against the agitation of settled issues."[59] "The law of the case governs [this Court's] exercise of discretion; [it] can reconsider previously decided issues under extraordinary circumstances, such as if new evidence becomes available, a supervening law has been introduced, or the prior decision was clearly erroneous and would create manifest injustice."[60]

Plaintiffs do not argue that either of the first two exceptions are present here. Rather, they assert only that the previous determinations that the SORNA registration requirements apply to Plaintiffs were in error and, thus, they rely on the third ground for revisiting a prior decision—that the decisions were clearly erroneous and would create manifest injustice. A decision is clearly erroneous if, "although there is evidence to support it, the reviewing court on the entire evidence

---

[58] *Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir. 2003) (internal quotation marks omitted).
[59] *Walker v. Coffey*, 956 F.3d 163, 170 (3d Cir. 2020) (internal quotation marks omitted).
[60] *Id.* (internal quotation marks omitted).

is left with the definite and firm conviction that a mistake has been committed."[61]

"Similarly, a manifest injustice occurs only when there is direct, obvious, and observable error."[62]

The Court concludes that Plaintiffs have failed to satisfy their burden. Although Plaintiffs cite several cases that discuss the interplay between the duty to register contained in 34 U.S.C. § 20913 and the criminal provisions contained in 18 U.S.C. § 2250, and note that an individual may not be criminally charged unless he engages in interstate travel,[63] Plaintiffs ignore a great deal of nuance in those decisions, most notably the Third Circuit's opinion in *United States v. Pendleton*.[64]

In *Pendleton*, the Third Circuit considered the question of whether SORNA's registration requirement "is beyond the bounds of the Commerce Clause because it requires registration from all sex offenders, not just those who travel in interstate commerce."[65] The court examined the Necessary and Proper Clause of the United States Constitution and noted that Congress may regulate activities that do not substantially affect interstate commerce if "'the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power' or under other powers that the Constitution grants Congress the authority to implement."[66]

---

[61]   *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020).

[62]   *Ass'n of N.J. Rifle & Pistol Clubs Inc. v. Att'y Gen. N.J.*, 974 F.3d 237, 247 (3d Cir. 2020) (brackets and internal quotation marks omitted).

[63]   Doc. 86 at 13-15.

[64]   636 F.3d 78 (3d Cir. 2011).

[65]   *Id.* at 86.

[66]   *Id.* at 87 (quoting *United States v. Comstock*, 560 U.S. 126, 135 (2010)).

The Third Circuit cited, among other cases, a decision of the United States Court of Appeals for the Fifth Circuit wherein that court held that

> requiring sex offenders to register both *before* and after they travel in interstate commerce—which clearly facilitates monitoring those movements and which has a minimal practical impact on intrastate sex offenders (who cannot be punished under federal law for failure to register unless and until they travel in interstate commerce)—is 'reasonably adapted' to the goal of ensuring that sex offenders register and update previous registrations when moving among jurisdictions.[67]

As the Third Circuit recognized on appeal here, after analyzing relevant case law, *Pendleton* unambiguously held "that under the Commerce Clause and the Necessary and Proper Clause, federal SORNA's registration requirement applies to all sex offenders—even those who do not travel in interstate commerce."[68] Plaintiffs' arguments to the contrary, and citation to *Carr v. United States*,[69] stem from their failure to recognize the difference between the duty to register—which applies to all sex offenders—and SORNA's criminal provisions, which apply only to sex offenders who travel between the states and fail to update their registration.

The duty to register contained in 34 U.S.C. § 20913 is independent of the criminal provisions contained in 18 U.S.C. § 2250. It is certainly true, as the Supreme Court noted in *Carr*, that *prosecutions* under § 2250 are not permissible absent interstate travel, because a prosecution in such circumstances would create

---

[67] *Id.* at 88 (quoting *United States v. Whaley,* 577 F.3d 254, 261 (5th Cir. 2009) (emphasis added)).

[68] *Thomas*, 799 F. App'x at 134 (citing *Pendleton*, 636 F.3d at 87-88).

[69] 560 U.S. 438, 446 (2010).

"an illogical result given the absence of any obvious federal interest in punishing such state offenders."[70] However, § 20913's registration provision, which requires "sex offenders to update their registrations due to intrastate changes of address or employment status[,] is a perfectly logical way to help ensure that states will more effectively be able to track sex offenders when they do cross state lines,"[71] as that provision "clearly facilitates monitoring [sex offenders'] movements."[72] Thus, mandating that an individual register as a sex offender even absent interstate travel is entirely consistent with an "obvious federal interest in"[73] ensuring that sex offenders cannot "avoid all registration requirements just by moving to another state."[74] "In sum, just because [Plaintiffs] ha[ve] not violated § 2250 does not mean that [they] need not register under § 20913(a)."[75]

Based on the above-discussed case law, the Court is not left with the firm and definite conviction that this Court or the Third Circuit erred in its previous determinations. Rather, consistent with this Court's prior opinion and the decision of the Third Circuit, the Court is of the firm conviction that Plaintiffs are required to register as sex offenders under SORNA,[76] and such registration is not inconsistent

---

[70] *Id.*

[71] *Pendleton*, 636 F.3d at 87 (quoting *United States v. Guzman*, 591 F.3d 83, 91 (2d Cir. 2010)).

[72] *Id.* at 88 (quoting *Whaley,* 577 F.3d at 261).

[73] *Carr*, 560 U.S. at 446.

[74] *Pendleton*, 636 F.3d at 87.

[75] *Thomas*, 799 F. App'x at 134.

[76] *See* Doc. 64 at 3 n.12 (noting that 34 U.S.C. § 20913(a)'s registration language is mandatory, and that 34 U.S.C. § 20913(e) requires that states adopted criminal penalties for individuals who fail to register, "with no mention of interstate travel requirements").

with the Tenth Amendment but, rather, is consistent with Congress' power under the Commerce Clause.

### B.    Whether Defendants are Entitled to Judgment on the Pleadings

Turning next to the question of whether Defendants are entitled to judgment on the pleadings, the Court concludes that they are entitled to judgment in their favor as to each of Plaintiffs' claims.

### 1.    Due Process Claim

First, Plaintiffs contend that they have been deprived of a liberty interest without adequate due process, as they were not afforded an opportunity to demonstrate that they are exempt from the sex offender laws prior to being placed on the sex offender registry.[77] This claim is foreclosed by binding precedent.

In *Connecticut Department of Public Safety v. Doe*, the United States Supreme Court considered an argument that the relevant Connecticut state sex offender registration "law deprives [respondent] of a liberty interest—his reputation combined with the alteration of his status under state law—without notice or a meaningful opportunity to be heard."[78] The Court noted, however, that the relevant law required that individuals register as sex offenders based solely on their qualifying sex offense conviction, and not based on any finding of dangerousness.[79] Accordingly, the respondent's assertion that he was entitled to a hearing on the issue

---

[77]   Doc. 59 at 23-25; Doc. 86 at 10.
[78]   538 U.S. 1, 6 (2003).
[79]   *Id.* at 7.

of his dangerousness failed, as "due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute."[80] Because "the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest," any due process claim necessarily failed.[81]

The Third Circuit relied on that decision in its own unpublished decision, wherein it held that an argument that an individual "should have been afforded procedural due process protections before he was classified as a Tier III offender and subjected to the lifetime registration requirement" was without merit.[82] The Third Circuit noted that Megan's Law classifies individuals as sex offenders and places them in certain tiers based solely on their crimes of conviction[83] and, accordingly, held that "[b]ecause it is uncontested that [appellant] was properly tried and convicted, he has received the process that he is due, and a further hearing (with the related procedural protections he requested) is not required."[84]

---

[80]  *Id.*

[81]  *Id.*

[82]  *Riley v. Corbett*, 622 F. App'x 93, 95-96 (3d Cir. 2015).

[83]  *Id.* at 96.

[84]  *Id.* The Third Circuit is not alone in reaching such a conclusion. Every circuit court that has addressed a similar statute has reached the same result. *See Does 1-7 v. Abbott*, 945 F.3d 307, 311 (5th Cir. 2019); *Doe v. DeWine*, 910 F.3d 842, 852-53 (6th Cir. 2018); *Murphy v. Rychlowski*, 868 F.3d 561, 566-67 (7th Cir. 2017); *Doe v. Cuomo*, 755 F.3d 105, 113 (2d Cir. 2014); *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 759-60 (4th Cir. 2013); *Am. C.L. Union of Nev. v. Masto*, 670 F.3d 1046, 1059 (9th Cir. 2012); *United States v. Ambert*, 561 F.3d 1202, 1208 (11th Cir. 2009); *Doe v. Miller*, 405 F.3d 700, 709 (8th Cir. 2005); *Does 1-5 v. Williams*, No. 01-7162, 2003 WL 21466903, at *1 (D.C. Cir. June 19, 2003).

Here too, SORNA classifies individuals as sex offenders—and requires that they register as such—based solely on their crime of conviction.[85] Therefore, no facts are relevant to Plaintiffs' registration under SORNA other than the fact of their convictions. Because SORNA's "requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest," Plaintiffs' due process claim fails.[86]

Plaintiffs attempt to distinguish the aforementioned cases by arguing that, because they challenge whether they fall within SORNA and Megan's Law at all, the due process holdings in *Connecticut Department of Public Safety* and *Riley* are not applicable to them, since whether the statutes apply to them is a "relevant" consideration.[87] The Supreme Court's decision in *Connecticut Department of Public Safety*, however, is broad enough to encompass Plaintiffs' claim. The Supreme Court plainly held that, where a "law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest," a procedural due process claim fails, as is the case here.[88]

In that vein, several circuit courts have rejected Plaintiffs' very argument—that individuals are entitled to a hearing to determine if their convictions qualify as sex offenses that mandate their registration. For example, in *Murphy v. Rychlowski*,

---

[85] 34 U.S.C. § 20911(1); 34 U.S.C. § 20911(5)(A)(i); 34 U.S.C. § 20913(a).
[86] *Conn. Dep't of Pub. Safety*, 538 U.S. at 7.
[87] Doc. 86 at 9-10.
[88] *Id.*

the United States Court of Appeals for the Seventh Circuit considered a due process

challenge to an individual's sex offender registration.[89] The appellant argued that the

Supreme Court's decision in *Connecticut Department of Public Safety* did not

preclude his claim "because he does not seek to prove whether or not he is

dangerous" but, "[r]ather, he argues that he seeks to prove facts that *are* material to

Wisconsin's registration scheme—that he is neither currently required to register as

a sex offender in California nor currently registered at this time."[90] The Seventh

Circuit concluded:

> We do not read *Connecticut Department of Public Safety* as standing
> for the proposition that an individual is entitled to process to challenge
> the legal determinations made by the authority charged under state law
> with administering a sex offender statute. Nor do we find compelling
> Murphy's argument that his California registration status is a *fact*
> relevant to the Wisconsin statute. Because Murphy's registration status
> in California was established after a procedurally safeguarded
> proceeding (the criminal proceedings), we hold that he was not entitled
> to pre-registration process pursuant to the Supreme Court's holding in
> *Connecticut Department of Public Safety*.[91]

Similarly, in *American Civil Liberties Union of Nevada v. Masto*, the United

States Court of Appeals for the Ninth Circuit examined whether a state sex offender

registration law violated the appellants' procedural due process rights.[92] There too

the appellants "attempt[ed] to distinguish *Connecticut Department of Public Safety*

. . . on the ground that Plaintiffs are requesting a hearing to determine whether or not

---

[89]   868 F.3d 561 (7th Cir. 2017).
[90]   *Id.* at 566.
[91]   *Id.* at 566-67.
[92]   670 F.3d 1046 (9th Cir. 2012).

they were in fact convicted, a factor—unlike actual dangerousness—that is decidedly material under" the relevant statute.[93] The Ninth Circuit held that

> Plaintiffs' argument is unavailing because the fact of conviction is something "that a convicted offender has already had a procedurally safeguarded opportunity to contest." *Connecticut Dep't of Pub. Safety,* 538 U.S. at 7. The Due Process Clause does not entitle an individual to a hearing unless there is "some factual dispute" that a hearing could serve to resolve. *Codd v. Velger,* 429 U.S. 624, 627 (1977) (per curiam). A hearing to ascertain each individual's crime of conviction is a "bootless exercise," *Connecticut Dep't of Pub. Safety,* 538 U.S. at 7, because Nevada sex offenders have already had the fact of their conviction established—with all of the constitutionally required procedural safeguards—through the criminal justice system. "[A]dequate procedural safeguards at the conviction stage are sufficient to obviate the need for any additional process at the registration stage." *United States v. Juvenile Male,* 670 F.3d 999, 1014 (9th Cir. 2012).[94]

Consistent with those decisions, because SORNA requires registration based solely on the fact of a conviction, Plaintiffs were afforded all the process to which they were entitled when they were convicted of their underlying criminal offenses. Consequently, Defendants are entitled to judgment on the pleadings as to Plaintiffs' due process claim.

### 2.      Retaliation Claim

Next, Plaintiffs claim that their involuntary registration was the result of retaliation against them for engaging in constitutionally protected activity.[95] To sustain a claim for retaliation, a "plaintiff must allege (1) that the conduct which led

---

[93]   *Id.* at 1059.
[94]   *Id.*
[95]   Doc. 59 at 25-26.

to the alleged retaliation was constitutionally protected; (2) that he suffered some adverse action at the hands of the prison officials; and (3) . . . that his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action."[96] Should the plaintiff establish those elements, "the burden shifts to the defendant to prove by a preponderance of the evidence that it would have made the same decision absent the protected conduct."[97]

Even assuming—as the Court must on a motion for judgment on the pleadings—that Plaintiffs engaged in constitutionally protected activity, their allegations are insufficient to establish that they suffered adverse action. Adverse action is defined as action that is "sufficient to deter a person of ordinary firmness from exercising his . . . rights."[98] Because Plaintiffs were required to register as sex offenders, forcing Plaintiffs to so register is not an action that could deter a person of ordinary firmness from exercising his rights. Therefore, Defendants are entitled to judgment on the pleadings as to Plaintiffs' retaliation claim.

### 3.    *Ex Post Facto* Claim

Next, Plaintiffs assert that their involuntary registration violated the *Ex Post Facto* Clause, as their sentences did not include any registration requirement.[99] However, the United States Supreme Court has previously upheld sex offender

---

[96]  *Oliver v. Roquet*, 858 F.3d 180, 190 (3d Cir. 2017) (internal quotation marks omitted).
[97]  *Id.* (internal quotation marks omitted).
[98]  *Id.* at 190 n.6 (internal quotation marks omitted).
[99]  Doc. 59 at 26-28.

registration laws against *ex post facto* challenges,[100] and the Third Circuit has concluded that SORNA does not offend the *Ex Post Facto* Clause.[101]

Even disregarding the criminal portion of SORNA, the United States Court of Appeals for the Fourth Circuit in *United States v. Under Seal* concluded that "SORNA's registration requirements" considered alone do not violate the *Ex Post Facto* Clause.[102] The Court finds that opinion persuasive and, for the same reasons expressed therein, finds that—even if there were no binding authority to guide the Court—SORNA's registration requirements do not violate the *Ex Post Facto* Clause. Consequently, Defendants are entitled to judgment on the pleadings as to this claim.

### 4.      Defamation and Invasion of Privacy Claims

Finally, Plaintiffs raise state law claims for defamation and invasion of privacy, and argue that forcing them to register as sex offenders caused them "to be publicly and falsely listed as dangerous perpetrators of recent sex crimes."[103] As to Plaintiffs' defamation claim, to succeed on that claim, they must prove, *inter alia*, that there is some defamatory character to the challenged communication.[104]

---

[100]  *Smith v. Doe*, 538 U.S. 84, 91 (2003).

[101]  *United States v. Shenandoah,* 595 F.3d 151, 158-59 (3d Cir. 2010), *abrogated on other grounds by Reynolds v. United States,* 565 U.S. 432 (2012).

[102]  709 F.3d 257, 59 (4th Cir. 2013). *See id.* at 263-66 (finding that SORNA's registration requirements put into place a non-punitive, civil regulatory scheme and, thus, did not violate *Ex Post Facto* Clause); *United States v. Wass*, 954 F.3d 184, 192-93 (4th Cir. 2020).

[103]  Doc. 59 at 28; *see id.* at 28-29.

[104]  *See* 42 Pa. Stat. and Cons. Stat. Ann. § 8343(a) (West 2020).

"Moreover, in Pennsylvania truth is an absolute defense to a defamation claim and a defendant need only show substantial, rather than complete, truth."[105]

Plaintiffs assert that the "sex-offender registry is designed to advertise the whereabouts of individuals whose crimes were relatively recent"[106] and, thus, their inclusion in the sex offender registry falsely implies that they are "dangerous perpetrators of recent sex crimes."[107] This, however, is not accurate. As discussed above, Plaintiffs were required to register as sex offenders under SORNA, and nothing on Pennsylvania's sex offender registry website implies that Plaintiffs are inherently dangerous or committed a recent sex offense. To the contrary, the website lists Plaintiffs' convictions and the dates of those convictions. Thus, not only does the fact of their registration not take on a defamatory character, but the information listed on the registry is substantially true. Similarly, because Defendants did not publish defamatory information but, rather, published truthful information, Plaintiffs cannot sustain a claim for invasion of privacy.[108] Accordingly, Defendants are entitled to judgment on the pleadings as to Plaintiffs' state law claims.

---

[105] *Pacitti v. Durr*, 310 F. App'x 526, 528 (3d Cir. 2009). *See also Schnabel v. Meredith*, 107 A.2d 860, 862 (Pa. 1954) ("The truth of a defamatory statement of fact is a complete defense to an action for defamation").

[106] Doc. 86 at 12.

[107] Doc. 59 at 28.

[108] *See Doe v. Wyoming Valley Health Care Sys., Inc.*, 987 A.2d 758, 765 (Pa. Super. Ct. 2009) (noting that plaintiffs must prove that defendants "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter").

### C.   Whether Defendants are Entitled to Qualified Immunity

Lastly, the Court concludes that, even if Defendants had violated Plaintiffs'
rights, judgment on the pleadings would still be warranted, as Defendants are entitled
to qualified immunity. As an initial matter, although Plaintiffs contend that certain
Defendants have waived the defense of qualified immunity by failing to raise it in
their answer,[109] the Court will exercise its discretion to permit the defense.

"Qualified immunity is an affirmative defense and therefore under Rule 8(c)
of the Federal Rules of Civil Procedure it should be asserted in the appropriate
responsive pleading. But under established circuit law, the failure to do so does not
automatically result in a waiver."[110] Thus, even where qualified immunity is not
raised until the summary judgment stage, a court may decline to find waiver after it
"exercise[s] its discretion and determine[s] whether there was a reasonable modicum
of diligence in raising the defense . . . [and] whether the plaintiff has been prejudiced
by the delay."[111]

Here, although certain Defendants did not explicitly raise the defense of
qualified immunity in their answer, they did assert that Plaintiffs were required to
register as sex offenders, which forms the basis of their qualified immunity
defense.[112] This argument put Plaintiffs on reasonable notice that Defendants would

---

[109]   Doc. 86 at 5.
[110]   *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 209 (3d Cir. 2001) (internal citation omitted).
[111]   *Id.* at 210.
[112]   Doc. 69 at 20-21.

attempt to defend themselves by arguing that Plaintiffs' rights were not violated. Moreover, other Defendants did explicitly state in their answer that they were entitled to qualified immunity because Plaintiffs were required to register as sex offenders.[113] This collectively put Plaintiffs on sufficient notice that qualified immunity would be at issue here, and notified them of the basis for any such defense. As such, Plaintiffs have not been prejudiced by any delay in raising the defense of qualified immunity. Moreover, although certain Defendants did not raise that defense in their answer, they did raise the defense early in the proceedings in this motion for judgment on the pleadings and, accordingly, exercised "a reasonable modicum of diligence in raising the defense."[114] The Court therefore declines to find that Defendants have waived the defense of qualified immunity.

Turning to the merits of the defense, "[q]ualified immunity shields officials from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[115] "When analyzing a qualified immunity claim [courts must] consider (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct."[116] "To be clearly established, a right must be so apparent that every

---

[113] Doc. 68 at 22-26.
[114] *Eddy*, 256 F.3d at 210.
[115] *IRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180 (3d Cir. 2021) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[116] *Id.* (internal quotation marks omitted).

reasonable official would understand that what he is doing is unlawful."[117] "An official will not be charged with such an understanding unless existing precedent has 'placed the statutory or constitutional question beyond debate.'"[118] "The legal principle established in a precedential case must 'clearly prohibit the official's conduct in the particular circumstances before him.'"[119]

Judged under that standard, Defendants are entitled to qualified immunity. Even if this Court were incorrect in concluding that Plaintiffs are required to register as sex offenders under SORNA, to date, no fewer than five federal judges have reached that conclusion in this matter, including one magistrate judge, the undersigned, and a panel of three circuit judges—to say nothing of the justices of the United States Supreme Court who declined to grant a writ of certiorari during Plaintiffs' interlocutory appeal. In light of this, even if Plaintiffs are not required to register as sex offenders, it cannot be said that "existing precedent has 'placed the statutory or constitutional question beyond debate.'"[120] As such, any rights that may have been infringed upon were not clearly established that the time that Defendants took their actions, and they are entitled to qualified immunity.

---

[117] *Id.* (internal quotation marks omitted).
[118] *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).
[119] *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (brackets omitted)).
[120] *Id.*

III.   **CONCLUSION**

In accordance with the above discussion, Defendants' motion for judgment on the pleadings will be granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge